IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILWU-PMA WELFARE PLAN BOARD OF TRUSTEES and ILWU-PMA WELFARE PLAN,<br><br>   Plaintiffs,<br><br>   v.<br><br>CONNECTICUT GENERAL LIFE INS. COMPANY, GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, and CAREWISE HEALTH, INC., f/k/a SHPS Health Management Solutions, Inc.,<br><br>   Defendants. | No. C 15-02965 WHA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |

**INTRODUCTION**

In this action for breaches of various duties relating to the administration of an ERISA employee welfare benefit plan, an order granted in part and denied in part defendants' motion to dismiss. Plaintiffs now seek leave to file a second amended complaint. For the reasons stated below, plaintiffs' motion is **GRANTED**.

**STATEMENT**

The facts of this case have been detailed in a prior order (Dkt. No. 53). Briefly, plaintiff ILWU-PMA Welfare Plan is an "employee welfare benefit plan" and a "multi-employer plan," as defined by the Employee Retirement Income Security Act of 1974, and plaintiff ILWU-PMA Welfare Plan Board of Trustees is the "named fiduciary and plan administrator" of the Plan (Amd. Compl. ¶¶ 4–5).

1 This matter concerns plaintiffs' relationship with certain third-party vendors that provided services that assisted plaintiffs in administering a healthcare indemnity program on behalf of the Plan's members. Specifically, defendant Carewise Health, Inc., negotiated discounts on fees from out-of-network healthcare providers, and defendants Great-West Life & Annuity Insurance Company and Connecticut General Life Insurance Company processed and paid members' claims under the indemnity program according to a scheme for reimbursement developed by the Plan. The instant motion only relates to plaintiffs' agreement with Connecticut General. Plaintiffs allege that Connecticut General disregarded the scheme for claims processing established by the Plan and failed to properly maintain records of the processed claims, among other contractual breaches.

Plaintiffs commenced this action in June 2015 and filed their first amended complaint in September 2015. Defendants each separately moved to dismiss the first amended complaint in October 2015. The order on defendants' motions to dismiss allowed the Board's claims under ERISA, both plaintiffs' indemnity claims against Great-West and Connecticut General, and both plaintiffs' breach of contract claims against Great-West and Carewise to proceed. Plaintiffs' breach of contract claim against Connecticut General and their negligence and Unfair Competition Law claims against all defendants were dismissed although plaintiffs could seek leave to amend those claims. All other claims were dismissed without leave to amend.

Plaintiffs timely sought leave to file a second amended complaint within fourteen days of the order on defendants' motions to dismiss. Plaintiffs only seek leave to amend their claim for breach of contract against Connecticut General. This order follows full briefing and oral argument.

**ANALYSIS**

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (internal citation omitted). Connecticut General limits its opposition to plaintiffs' motion to futility. The

test for futility is whether the proposed amended complaint would survive a motion to dismiss. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). In considering a motion for leave to amend, all inferences should be drawn in favor of granting the motion. *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

A prior order dismissed plaintiffs' breach of contract claim against Connecticut General because the complaint failed to allege facts that plausibly showed that plaintiffs performed their contractual obligations or that their performance was excused — a necessary element of their breach of contract claim against Connecticut General. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Plaintiffs' proposed second amended complaint includes the following allegation (Second Amd. Compl. ¶ 122):

> Notwithstanding [Connecticut General]'s failures and its breach of its contractual duties under the [agreement] the Plan and the Board performed all of their material obligations under the [agreement]. In particular, the Plan and the Board established the necessary banking arrangements, made all necessary payments to [Connecticut General], handled member enrollment, furnished information when requested by [Connecticut General], distributed [summary plan descriptions] to members, and otherwise performed their obligations. To the extent the Plan and the Board failed to perform any of their obligations under the [agreement] such failure to perform was excused by [Connecticut General]'s failures and breach of its own contractual duties.

Connecticut General argues that this proposed allegation is inadequate inasmuch as it omits certain responsibilities under the agreement, and it offers only the conclusion that plaintiffs' performance was excused without alleging facts to support that conclusion. This order holds that plaintiffs have adequately pled their breach of contract claim against Connecticut General, as now discussed.

Connecticut General argues that plaintiffs failed to allege that they "retain[ed] responsibility for all Plan benefit claims and all expenses incident to the Plan," a duty created by the agreement between the parties (Maddigan Decl., Exh. A § 5.3). Connecticut General omits critical language from that provision of its agreement with plaintiffs. The excerpted sentence actually reads, "*[e]xcept as otherwise explicitly provided in this Contract*, [plaintiffs] shall retain responsibility for all Plan benefit claims and all expenses incident to the Plan" (*ibid.*) (emphasis added). The excluded prefatory clause is critical, because the agreement in

3

fact required Connecticut General to undertake the bulk of the responsibility for claims adjudication, the derogation of which forms the basis for plaintiffs' breach of contract claim (Amd. Compl. ¶¶ 20–23).

Connecticut General also points to language indicating that "[a]ny review by [Connecticut General] of a claim or of charges declined is made as a service for [plaintiffs], who retain[] the final responsibility for determining [their] liability under the Plan" (*id.* § 2). Connecticut General argues that if plaintiffs had in fact retained "final responsibility," then it could never have acted as a fiduciary. Thus, Connecticut General contends that by proceeding with claims for both breach of contract and breach of fiduciary duties under ERISA, plaintiffs have been forced to plead "alternative factual versions of reality" rather than merely "alternative legal theories," rendering the legal theory posed in the proposed second amended complaint implausible in light of plaintiffs' claims for breach of fiduciary duties. Connecticut General's argument fails for three reasons.

*First*, as it did in its motion to dismiss, Connecticut General ignores that its authority over the disposition of plan assets (*i.e.*, the ability to write checks) is a sufficient basis to conclude it acted as a *de facto* fiduciary under ERISA whether or not it possessed or exercised discretionary authority over other aspects of plan administration. *IT Corp. v. General American Life Insurance Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997). *Second*, plaintiffs alleged that Connecticut General acted to undermine plaintiffs' authority over plan assets by disregarding the established standards for adjudicating claims. Connecticut General's alleged usurpation of plaintiffs' authority excused any failure by plaintiffs to exercise a duty to retain "final responsibility" over the adjudication of claims. *Third*, it is not apparent from the quoted language (or the agreement as a whole) that the parties intended to impose on plaintiffs a *duty* to retain final authority over claims adjudication. At the pleading stage, it is plausible that the quoted language retained a "veto power" for plaintiffs over any adjudication made by Connecticut General rather than imposing a duty. Indeed, the purpose of the agreement between the parties appears to have been to delegate the responsibility for claims adjudication to Connecticut General.

4

At this stage, plaintiffs' proposed second amended complaint plausibly alleges that they performed their duties under the agreement with Connecticut General or that such performance was excused. Accordingly, the proposed amendment would not be futile.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for leave to file a second amended complaint is **GRANTED**. There will be no further Rule 12 motions.

**IT IS SO ORDERED.**

Dated: February 11, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5