United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILWU-PMA WELFARE PLAN BOARD OF TRUSTEES and ILWU-PMA WELFARE PLAN,<br><br>Plaintiffs,<br><br>  v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY; GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY; and CAREWISE HEALTH, INC., f/k/a SHPS HEALTH MANAGEMENT SOLUTIONS, INC.,<br><br>Defendants. / | No. C 15-02965 WHA<br><br>**ORDER GRANTING IN PART MOTION FOR SANCTIONS** |

## INTRODUCTION

In this action for breach of duties under ERISA, plaintiffs move for sanctions for spoliation of evidence against one defendant. To the extent stated below, plaintiffs' motion is **GRANTED**.

## STATEMENT

Plaintiffs ILWU-PMA Welfare Plan and its Board of Trustees brought this ERISA action against, among others, defendant Carewise Health, Inc. The specific allegations against Carewise have been set forth in a prior order (Dkt. No. 53) and do not need to be repeated here. In brief, from 1997 to 2012, Carewise and its predecessor, CENTRA Cost Management Systems, provided plaintiffs with auditing and discount negotiation services for claims in excess

of one thousand dollars for covered medical services provided by out-of-network healthcare providers, in exchange for a commission equal to twenty-three percent of the savings from its negotiated discounts.

In 2007, plaintiffs required that all out-of-network claims be reimbursed, if at all, according to the usual, customary, and reasonable rates for the services billed. In 2009, however, Carewise entered into several "auto-discount" agreements with medical providers whereby Carewise would promptly pay the providers' fees without auditing if the providers accepted fixed discounts based on their billed charges rather than on the usual, customary, and reasonable rates for their services. Consequently, and in the absence of audits, plaintiffs ended up paying more than the usual, customary, and reasonable rates for claims negotiated by Carewise, but Carewise continued to receive its twenty-three percent commission based on discounts applied to the providers' billed charges. In short, everyone came out ahead save for plaintiffs, who wound up paying more than they should have — or so they allege.

In 2010, several providers sued both Carewise and plaintiffs in California state court for damages based on the auto-discount agreements. Effective March 9, 2011, plaintiffs and Carewise, among others, entered into a tolling agreement. The extent to which the state court proceedings informed the tolling agreement is unclear, but the tolling agreement provided in part (Dkt. No. 85-6):

> WHEREAS, the Parties believe that there may be claims between them arising from, related to, or connected to the Plan;
>
> WHEREAS, the Parties wish to preserve and defer any dispute between and among themselves with respect to any and all claims (legal, equitable, or otherwise) that they may have between themselves arising from, related to, or connected to Plan;
>
> . . .
>
> The [Parties] agree that the time of the Tolling Period will not be included in computing the time limited by any limitations period (statutory, contractual, or otherwise) applicable to any claims or causes of action any Party may bring against any other Party or Parties, including but not limited to claims or causes of action arising out of, related to, or connected with benefits paid out under the Plan and/or any claims for breaches of contractual or other obligations owed between and among the Parties.

The tolling agreement was subsequently extended eleven times through April 2, 2015 (*ibid.*).

2

During oral argument, counsel for both sides elaborated on certain details of Carewise's corporate structure relevant to the instant motion. According to counsel, Carewise's parent company — formerly named SHPS, Inc. — actually owned three separate subsidiaries, two of which are of interest to our case. The first, SHPS Health Management Solutions, Inc., is Carewise by a former name. It provided the discount negotiation services at issue and executed the tolling agreement in March 2011.

Another subsidiary — Human Resources Solutions, Inc. — was sold to ADP, Inc., in 2012. As part of the sale, ADP acquired HRS servers that contained electronically stored information for Carewise (then HMS), including the emails of Carewise employees. Carewise has been unable to explain why that information was stored on HRS servers and presumably transferred to ADP despite the fact that HRS and HMS operated as separate entities.

At the time of the sale in 2012, Carewise had a policy to retain electronically stored information for eight years. Thus, the servers sold to ADP should have contained electronically stored information for HMS dating back to 2004 (*see* Dkt. No. 86-13). The sale agreement provided for reasonable access to business information for both parties as reasonably required for, among other things, litigation purposes. The sale agreement further provided that both parties would retain each others' business information and, until the sixth anniversary of the agreement, not destroy any such information without first notifying the other party and giving it a reasonable opportunity to take possession, at its own expense, of the information to be destroyed (Dkt. No. 86-14). Counsel for ADP attended the oral argument on this motion and represented that ADP complied with the foregoing terms, but this seems doubtful on this record.

Since 2012, Carewise has retreated from the discount negotiation business — including its provision of services to plaintiffs — but continues to exist.

Plaintiffs commenced this action on June 25, 2015. On February 24, 2016, plaintiffs propounded to Carewise requests for production of documents relating to, among other things, Carewise's provision of services to plaintiffs, auto-discount agreements, and employee training and supervision (*see* Dkt. No. 85-7). Following written responses and objections by Carewise, the parties met and conferred in June 2016. Carewise then informed plaintiffs that it had sold

3

1 part of its business to ADP and "may not" have access to servers containing relevant
2 electronically stored information. On September 16, 2016, plaintiffs wrote a letter to Carewise
3 expressing "serious concern" that Carewise had failed to preserve potentially relevant evidence
4 and requesting, among other things, information regarding the sale to ADP (*see* Dkt. No. 85-9).
5 On October 21, 2016, Carewise replied in part (Dkt. No. 85-10) (emphasis added):

> Because Carewise's discovery efforts are ongoing, because approximately 1,000 pages of additional documents have been produced since your September 16, 2016 letter, and because Carewise expects to produce shortly approximately 80 boxes of relevant additional documents, *it would be far too early to request a "written explanation regarding the location of these servers, Carewise's sale of part of its business, and why Carewise did not preserve the information contained on the servers,"* even if such a request were otherwise appropriate.

Carewise produced 687 pages of documents on June 22, 2016 (Dkt. No. 86-3), another 735 pages on October 17, 2016 (Dkt. No. 86-4), and another 176,860 pages on November 4, 2016 (Dkt. No. 86-5). Fact discovery closed on November 30, 2016 (Dkt. No. 85-1 at 3). On December 2, 2016, Carewise produced another 142 pages of documents (Dkt. No. 86-10). In its opposition to the instant motion, Carewise claims it is still reviewing and preparing to produce "electronic data [including] tens of thousands of email chains from all but one of the former Carewise employees Plaintiffs identified as relevant witnesses" (Dkt. No. 86 at 3).

According to Steven Jaspers, Senior Director of Information Technology Services at Carewise, the company started communicating with ADP "concerning the process whereby Carewise might be able to obtain electronic data . . . transferred to ADP in connection with the sale" at some point "several weeks" prior to November 21, 2016 (Dkt. No. 77-1 at 3). "[D]espite the terms of the [sale agreement], ADP does not have electronic records relating to Carewise from before September 2009, and the email box for [Carewise employee] Joel Kline is not available" (Dkt. No. 86-13 at 3). According to plaintiffs, Kline was the Carewise "representative most frequently contacted" about usual, customary, and reasonable rates and Carewise's "lack of access to a . . . database" of such rates (Dkt. No. 85 at 1). Kline is also one of the Carewise custodians that plaintiffs identified as "likely to have [electronically stored information] that is material to this litigation" (*id.* at 5).

4

**ANALYSIS**

**1.    LEGAL STANDARD.**

Plaintiffs contend sanctions are warranted under either Federal Rule of Civil Procedure 37(e) or the Court's inherent power (Dkt. No. 85 at 9).  Because Rule 37(e) seems directly on point here, this order considers the instant motion under that framework.

Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

This order is mindful that the recently revised Rule 37(e) took effect on December 1, 2015, after the commencement of this action and the events in question.  Rule 86(a)(2)(B) provides that amended rules "govern . . . proceedings after [their effective date] in an action then pending unless . . . the court determines that applying them in a particular action would be infeasible or work an injustice."  Here, plaintiffs — *opposing* application of revised Rule 37(e) — admit its feasibility (Dkt. No. 85 at 9).  And Carewise — *urging* application of revised Rule 37(e) — benefits from its framework for sanctions (as compared to the frameworks for sanctions pursuant to either former Rule 37(e) or inherent power) (*see* Dkt. No. 86 at 21–25).

This order concludes application of revised Rule 37(e) would not work an injustice under these circumstances, and accordingly proceeds with the following analysis.[1]

**2.    DUTY TO PRESERVE.**

"Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty." F.R.C.P. 37(e) Advisory Committee's Note to 2015 Amendment. Our court of appeals has yet to elucidate the specific subject of spoliation based on failure to preserve relevant information prior to reasonably foreseeable litigation. In the meantime, this order looks to non-binding case law for further guidance.

Spoliation is the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. Aug. 21, 2012) (Judge Lucy Koh) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345–47 (Fed. Cir. 2011) (litigation does not need to be certain or imminent to be reasonably foreseeable).

Here, Carewise contends it owed no duty to preserve the electronically stored information at issue at the time of the sale to ADP because this lawsuit was not filed until June 2015 (Dkt. No. 86 at 8). This litigation, however, was reasonably foreseeable by March 2011, when both plaintiffs and Carewise entered into the tolling agreement quoted above. That agreement encompassed claims "arising from, related to, or connected to the Plan," and "arising

---

[1] In a footnote of their motion, plaintiffs state, "Some courts have held that Rule 37 only governs conduct that occurs during the pendency of a lawsuit, not actions that occurred prior to the lawsuit" (Dkt. No. 85 at 9 n.2). Plaintiffs cite *Beil v. Lakewood Eng'g & Mfg. Co.*, wherein the Sixth Circuit concluded "Rule 37 does not . . . apply to actions that occurred prior to the lawsuit," like "pre-litigation destruction of evidence." 15 F.3d 546, 552 (6th Cir. 1994). That decision, however, long predates the current version of Rule 37, which expressly contemplates "electronically stored information that should have been *preserved in the anticipation . . . of litigation*." F.R.C.P. 37(e) (emphasis added). In light of this language specifically encompassing pre-litigation conduct, *Beil* does not support plaintiffs' opposition to the application of revised Rule 37(e) here.

6

1  out of, related to, or connected with benefits paid out under the Plan and/or any claims for
2  breaches of contractual or other obligations owed between and among the Parties" (Dkt. No. 85-
3  6 (emphasis added)). Plaintiffs' claims herein essentially accuse Carewise of breaching
4  "contractual or other obligations" owed to plaintiffs in connection with "benefits paid out under
5  the Plan" and fall squarely within the scope of claims contemplated by the tolling agreement.

6  Carewise argues the tolling agreement nevertheless did not trigger any duty to preserve
7  because it failed to include an express agreement "to maintain electronic records or any other
8  form of evidence" (Dkt. No. 86 at 8–9). But the tolling agreement at least indicated the parties
9  foresaw or reasonably should have foreseen potential litigation between them arising out of
10 "breaches of contractual or other obligations" and "benefits paid out under the Plan." On this
11 record, the primary "contractual or other obligation[]" Carewise owed to plaintiffs — and the
12 crux of its connection to "benefits paid out under the Plan" — was its provision of discount
13 negotiation services. At least as to the provision of those services, then, the tolling agreement
14 should have put Carewise on notice that it possessed information relevant to reasonably
15 foreseeable litigation.[2]

16 Carewise also protests that, based on the tolling agreement, it "could not have known if
17 Plaintiffs would sue, whom they would sue, if anyone, amongst the multiple parties to the
18 tolling agreement, when they might sue, what claims they might bring against which parties,
19 and what documents over what time period might be relevant to unspecified hypothetical claims
20 that may or may not be made against unspecified parties at some unknown point in the future"
21 (Dkt. No. 86 at 9). This hand-wringing over the minutiae of potential litigation is a red herring.
22 Carewise executed a tolling agreement contemplating claims in connection with "benefits paid
23 out under the Plan" or "breaches of contractual or other obligations owed between and among
24 the Parties" (*see* Dkt. No. 85-6). Given the factual background underlying that agreement and
25 the parties thereto, the universe of potential claims encompassed by the foregoing language was
26 neither as broad nor as unpredictable as Carewise makes it out to be. Indeed, the tolling

---

28 [2] Carewise also apparently provided plaintiffs with some medical necessity review services, which are included in the complaint (Dkt. No. 62 at 11, 24), but the gravamen of plaintiffs' grievances against Carewise is in relation to its auto-discount agreements.

7

1 agreement's description of potential claims, as it turns out, aptly described the claims plaintiffs
2 ultimately brought against Carewise.

3 **3.     REASONABLE STEPS?**

4 Next, Carewise contends that even if it had a duty to preserve evidence at the time of the
5 sale to ADP, it satisfied that duty by including provisions in the sale agreement for access to
6 and retention of business information (Dkt. No. 86 at 11–14).  Setting aside, for the time being,
7 Carewise's apparent confusion as to whether it (*i.e.*, the subsidiary formerly known as HMS) or
8 its parent company executed the sale agreement, Carewise's own assertions belie its claim that
9 the sale agreement with ADP constituted "reasonable steps" under these circumstances.

10 For starters, Carewise admits the inexplicable fact that its electronically stored
11 information — including information relevant to its reasonably foreseeable litigation with
12 plaintiffs — were stored on HRS servers and presumably transferred to ADP, even though
13 Carewise (as HMS) and HRS operated as separate entities.  Moreover, Carewise, which at the
14 time of the sale was already party to the tolling agreement and obligated to preserve relevant
15 information for reasonably foreseeable litigation, failed to retain or preserve copies of its own
16 electronically stored information.  Instead, Carewise staked its ability to fulfill its preservation
17 obligations on two clauses in the sale agreement with ADP (assuming, of course, that the
18 relevant records were in fact delivered to ADP and not despoiled while in Carewise's
19 possession prior to the sale).  And, as it turns out, those clauses are unable to effectuate prompt
20 access to, and complete retrieval of, electronically stored information from ADP as needed for
21 litigation purposes.  Carewise resisted plaintiffs' initial attempts to address this problem (*see*
22 Dkt. No. 85-10 (declaring in October 2016 that it was "far too early" for plaintiffs to inquire
23 about the servers sold to ADP)), and its incomplete attempts to retrieve electronically stored
24 information have been sluggish at best and ineffective at worst.

25 That Carewise did not simply retain copies of its own electronically stored information
26 prior to the sale to ADP, moreover, undermines its bold assertion that it "did everything it could
27 reasonably have been expected to do" (*see* Dkt. No. 86 at 14).  Carewise criticizes plaintiffs'
28 suggestion that it should have made copies as "tantamount to a claim that a party can never sell

8

a business as long as future litigation is possible," since "in order to sell a business, a party must transfer to the buyer the business property owned by that entity, including trade secrets, computer records and servers" (*id.* at 17). But, as stated, this litigation between Carewise and plaintiffs was not only "possible" but reasonably foreseeable in light of the tolling agreement. Carewise does not explain why preserving relevant information for reasonably foreseeable litigation — *e.g.*, by making copies for that purpose — would preclude business sales as a general rule. And even if such a rule existed, it would have no application here because HRS, not Carewise, sold to ADP. Yet ADP obtained servers that inexplicably contained electronically stored information for Carewise (then HMS), which operated as a separate entity and had no reason to turn over its electronically stored information as part of the sale.

Carewise cites for support *E.E.O.C. v. Star Tool & Die Works, Inc.*, 699 F. Supp. 120 (E.D. Mich. Dec. 17, 1987) (Judge Ralph Freeman), wherein the Equal Employment Opportunity Commission filed a discrimination action against the defendant employers based on charges initially filed by three individuals seven-and-a-half years prior. Judge Freeman granted summary judgment for those defendants based on the equitable doctrine of laches, concluding in relevant part that they were unduly prejudiced by the EEOC's unreasonable delay in bringing the case because they had, in the interim, sold their assets to another company that inadvertently lost or destroyed relevant records. Specifically, Judge Freeman noted that 29 C.F.R. 1602.14(a), which imposed certain recordkeeping requirements on employers, was "not so burdensome" as to require the defendants "to guard their personnel records continuously for an indefinite period of time amounting to several years." *Id.* at 123.

*Star Tool*, which had nothing to do with sanctions for spoliation, is inapposite here. Even insofar as Carewise uses *Star Tool* to suggest it is not responsible for records lost after the sale to ADP, *Star Tool* is readily distinguishable from our case, which does not involve a sale of assets by a party to the litigation, regulatory recordkeeping duties for employers, or an overly "burdensome" duty to keep records for an indefinite period of time. Nothing about the circumstances here would obviate Carewise's obligation to have preserved relevant information for reasonably foreseeable litigation.

9

Carewise baldly asserts that, "were [it] to 'make copies' or in any other way maintain possession of documents, electronic records or other business property, it would run the risk of being in instant breach of multiple provisions of its sales agreement with ADP" (Dkt. No. 86 at 18). This purported concern is unfounded given that Carewise is in fact currently retrieving and processing voluminous electronically stored information from ADP pursuant to the sale agreement and with ADP's cooperation (*see, e.g.*, Dkt. No. 86-13). But even if the sale agreement somehow prevented Carewise from copying its own business records to preserve relevant information for reasonably foreseeable litigation, responsibility for such an obstacle would lie squarely with Carewise anyway insofar as it claims credit for negotiating the sale agreement with ADP. In fact, Carewise claims it actually included specific provisions for access to and retention of its business records, *including for litigation purposes*. Those very provisions are the centerpiece of Carewise's position that it took reasonable steps to preserve evidence. It is disingenuous of Carewise to claim it negotiated sale terms with ADP to preserve evidence, and in the same breath pretend it could not have negotiated terms to do the same.[3]

This order declines to find, as plaintiffs suggest, that "it is *per se* unreasonable for a party with a duty to preserve to fail to make any copies of [electronically stored information] before selling the systems and servers on which such [information] is housed and to depend solely on a third party to retain and preserve such [information]" (*see* Dkt. No. 85 at 7–8). In light of these circumstances, however, this order concludes Carewise did not take reasonable steps to preserve relevant information for this reasonably foreseeable litigation.

**4.    SANCTIONS.**

It is difficult to proceed further with the Rule 37(e) analysis given the limited record on the instant motion. For example, it is not yet apparent how the loss of electronically stored information in question happened, or whether Carewise or ADP was responsible. Similarly unclear is the full extent to which Carewise's inefficient protocols for data retrieval from ADP will ultimately impact this litigation. At this point, even the extent — if any — to which lost

---

[3] This order similarly rejects Carewise's suggestions that the electronically stored information in question is not in its "possession, custody, or control," or that it cannot "force [ADP] to produce electronic records," such that Carewise is excused from its production obligations (*see* Dkt. No. 86 at 6).

10

information can be "restored or replaced through additional discovery" remains unknown. It is thus premature to determine the full extent to which plaintiffs are actually prejudiced. However, given Carewise's own admissions that electronically stored information prior to September 2009, as well as Kline's emails, are either irretrievably lost or susceptible to only limited reconstruction from other sources, at least some prejudice to plaintiffs is already established.

To cure that prejudice, and before deciding the full spectrum of spoliation issues, this order therefore **REOPENS** discovery to the limited extent necessary to effectuate the following procedures:

1. Carewise shall serve subpoenas on ADP by January 31, and conduct up to five depositions of ADP personnel by February 14, as needed to determine the full extent to which information relevant to this litigation has been lost, and to locate or recover such information to the maximum extent possible. Depositions taken pursuant to this order will not count against the deposition limit for this case.

2. Carewise should consider joining ADP as a third-party defendant in this case so that Carewise may lay before the trier of fact any circumstances that might excuse or mitigate its failure to retain or retrieve relevant information for purposes of this litigation.

3. Plaintiffs may also serve subpoenas on ADP by January 31, and conduct up to five depositions of ADP or Carewise personnel by February 14, as needed to determine the full extent to which information relevant to this litigation has been lost, and to locate or recover such information to the maximum extent possible. Additionally, plaintiffs may also use this discovery to ascertain any communications between Carewise and ADP regarding the preservation or retrieval of such information. Depositions taken pursuant to this order will not count against the deposition limit for this case.

4. Carewise shall pay all reasonable attorney's fees and costs incurred by plaintiffs pursuant to this order. Plaintiffs must keep organized time notes, clearly apportioned and itemized, limited to and in support of such fees and costs sought to be recovered. Bills shall be submitted to Carewise on a monthly basis, to be paid promptly within 14 calendar days.

5. Carewise shall also pay any reasonable additional expert witness fees incurred by plaintiffs that are directly attributable to the delay in obtaining relevant electronically stored information, including for reworking plaintiff's expert reports to account for any newly found materials. Possibly, and as a potential sanction, Carewise may be barred from updating its own expert reports to address any newly found materials. This latter option is under consideration and will be decided at a later time.

6. Plaintiffs may recover reasonable attorney's fees and costs incurred in bringing this motion. For the hearing on this motion, however, plaintiffs may recover reasonable fees and costs for only one attorney in attendance.

11

The Court is surprised that this problem — which began with requests for production propounded in February 2016 and which counsel discussed in June 2016 — was not brought to its attention sooner, and suspects that both sides wasted too much time up to this point. From this point forward, the Court expects both sides to work daily on the supplemental discovery outlined above. Failure to timely serve subpoenas on ADP may result in prompt sanctions or denial of relief. Otherwise, the extent, if any, to which further sanctions are warranted under either Rule 37(e) or inherent power will be determined after the dust settles on wringing from ADP all relevant evidence, and after all available evidence is placed before the trier of fact at trial so that the importance of any remaining gaps can be assessed.

The foregoing supplemental discovery shall be completed by **MARCH 16**. There shall be no private agreement to adjourn any deadline set forth in this order. If ADP stonewalls, counsel must immediately bring that fact to the Court's attention. All other case management dates are hereby **VACATED**. Plaintiffs' request for additional depositions (Dkt. No. 89) is **HELD IN ABEYANCE** pending the outcome of these proceedings. A further case management conference is set for **MARCH 23 AT 11:00 A.M.**

## CONCLUSION

To the extent stated above, plaintiffs' motion for sanctions is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 24, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE